TIMOTHY FANNING, APPELLANT, *v.* CHARLES GREGOIRE AND CHARLES BOGG.

In 1838, the Legislature of the Territory of Iowa authorized Fanning, his heirs and assigns, to establish and keep a ferry across the Mississippi river, at the town of Dubuque, for the term of twenty years; and enacted further, that no court or board of county commissioners should authorize any person to keep a ferry within the limits of the town of Dubuque.

In 1840, Fanning was authorized to keep a horse ferry-boat instead of a steamboat.

In 1847, the General Assembly of the State of Iowa passed an act to incorporate the city of Dubuque, the fifteenth section of which enacted that the "city council shall have power to license and establish ferries across the Mississippi river, from said city to the opposite shore, and to fix the rates of the same.

In 1851, the mayor of Dubuque, acting by the authority of the city council, granted a license to Gregoire (whose agent Bogg was) to keep a ferry for six years from the 1st of April, 1852, upon certain payments and conditions.

The right granted to Fanning was not exclusive of such a license as this. The prohibition to license another ferry did not extend to the legislature, nor to the city council, to whom the legislature had delegated its power.

Nor was it necessary for the city council to act by an ordinance in the case. Corporations can make contracts through their agents without the formalities which the old rules of law required.

THIS was an appeal from the District Court of the United States for the District of Iowa.

It originated in the State Court, called the District Court of the County of Dubuque, and was transferred to the District Court of the United States, at the instance of Gregoire and Bogg, the defendants. Gregoire was a citizen and resident of Missouri, and Bogg of Illinois.

The facts in the case are stated in the opinion of the court. The District Court dismissed the petition of Fanning, with costs, upon the ground that his ferry franchise was not exclusive, whereupon he appealed to this court.

It was argued by *Mr. Wilson,* for the appellant, and by *Mr. Platt Smith,* for the appellees.

The points made by *Mr. Wilson* were the following.

The act of the Legislature of Iowa, entitled "An act to authorize Timothy Fanning to establish and keep a ferry across the Mississippi river at the town of Dubuque," approved December 14th, 1838, gave said Fanning an exclusive right as against any other ferry not established by a direct act of the legislature. See that act in vol. 1st of Iowa Statutes, pages 205 and 206.

By the word "court," in the first line of the 2d section of said act, is meant, Webster's definition of the word, " any jurisdiction, civil, military, or ecclesiastical." See Webster's Dictionary, definition of " court."

It did not mean a judicial tribunal. The legislature uses the word as defined by Webster. See Iowa Laws, vol. 1st, p. 208–9, where it is applied to a tribunal which could have no judicial power. See Act of Congress organizing Iowa, published in the same book, p. 34, § 9.

The authority, by virtue of which the defendants claim the right to carry on a ferry at the same place where Fanning's ferry is established, is derived from a contract between the mayor and aldermen of the city of Dubuque, of the one part, and A. L. Gregoire, of the other; the city authorities claim to derive this power from the 15th section of an act of the Legislature of Iowa, to incorporate and establish the city of Dubuque, approved February 24, 1847.

If Fanning's charter was not exclusive, as contended for, and if the city authorities could establish and license another, they can only do so in the manner prescribed by the act creating the city, to wit, by ordinance. See § 15 of said city charter.

Sec. 20 of said city charter provides that every ordinance of said city, before it shall be of any force or validity, or in any manner binding on the inhabitants thereof, or others, shall be signed by the mayor and published in one or more newspapers in said city, at least six days.

The ferry of defendants was established by contract, and not by ordinance.

" A corporation can act only in the manner prescribed by the act creating it." Chief J. Marshall, in Head & Amory *v.* Prov. Ins. Co. 2 Cranch, 127, (1 Cond. 371); 4 Wheaton, 518, (4 Cond. 528); 12 Wheaton 64; 4 Peters, 152; 8 Wheaton, 338; 2 Scammon, 187.

The act of City Council of Dubuque establishing the ferry, which the defendants claim to carry on, was null and void, and confers upon them no ferry franchise, and the plaintiff's right to maintain this action follows, as a matter of course.

" The owner of an old established ferry has a right of action against him who, in his neighborhood, keeps a free ferry, or a ferry not authorized by the proper tribunal, whereby an injury accrues to the owner of the established ferry." Long *v.* Beard 3 Murph. 57.

*Mr. Smith* divided his argument into the two following heads.

1. That the Legislature of Iowa had no right to grant such an exclusive right as the one contended for. The argument upon this head is omited for want of room.

2. But admit the power of the legislature to confine the travelling public to horse-boat accommodation, still the words of the act do not give an exclusive right; there are no words of exclusion expressed, and none should be implied. The act by express terms prohibits courts and boards of commissioners from granting other ferry rights, *expressio unius est exclusio alterius*. The legislature were not excluded from giving the city of Dubuque a right to license another ferry.

It is a well-settled principle of law that in construing government grants, the courts will construe them most strongly against the grantee, and in favor of the grantor; that if the terms of the grant are ambiguous, or admit of different meanings, that meaning which is most favorable to the government will be adopted, and no right or privilege will be deemed to be surrendered by implication. 2 Blackstone's Com. 347; 1 Kent's Com. 460.

This proposition is sustained by numerous and well-adjudged cases. In the case of Charles River Bridge *v.* Warren Bridge et al. 11 Peters, 420, Ch. J. Taney says: " The rule of construction in such cases is well settled, both in England and by the decisions of our own tribunals. In 2 Barn. & Adol. 793, (22 Eng. Common Law, 185,) in the case of the Proprietors of the Stourbridge Canal *v.* Wheely and others, the court says, " The canal having been made under an act of parliament, the rights of the plaintiffs are derived entirely from that act. This, like many other cases, is a bargain between a company of adventurers and the public, the terms of which are expressed in the statute; and

the rule of construction in all such cases is now fully established to be this: that any ambiguity in the terms of the contract must operate against the adventurers, and in favor of the public, and the plaintiffs can claim nothing that is not clearly given them by the act." And the doctrine thus laid down is abundantly sustained by the authorities referred to in this decision. But we are not now left to determine for the first time the rule by which public grants are to be construed in this country. The subject has already been considered in this court, and the rule of construction, above stated, fully established. In the case of the United States v. Arredondo, 6 Peters, 691, the leading cases upon this subject are collected together by the learned judge who delivered the opinion of the court, and the principle recognized, that in grants by the public nothing passes by implication."

" When a corporation alleges that a State has surrendered for seventy years its power of improvement and public accommodation, in a great and important line of travel, the community have a right to insist 'that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear.' The continued existence of a government would be of no great value, if, by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation; and the functions it was designed to perform transferred to the hands of privileged corporations. The rule of construction announced by the court in 4 Peters, 514, was not confined to the taxing power; nor is it so limited in the opinion delivered. On the contrary, it was distinctly placed on the ground that the interests of the community were concerned in preserving undiminished the power then in question; and whenever any power of the State is said to be surrendered or diminished, whether it be the taxing power or any other affecting the public interest, the same principle applies, and the rule of construction must be the same. No one will question that the interests of the great body of the people of the State would, in this instance, be affected by the surrender of this line of travel to a single corporation, with the right to exact toll and exclude competition for seventy years. While the rights of private property are safely guarded, we must not forget that the community also have rights, and that the happiness and well being of every citizen depend on their faithful preservation."

In the case of the Mohawk Bridge Co. v. The Utica and Schenectady Railroad Co. 6 Paige's Ch. R. 554, it is held that " the grant to a corporation of the right to erect a toll bridge across a river, without any restriction as to the right of the

legislature to grant a similar privilege to others, does not deprive a future legislature of the power to authorize the erection of another toll bridge across the same river so near to the first as to divert a part of the travel which would have crossed the river on the first bridge if the last had not been erected."

" Grants of exclusive privileges, being in derogation of public rights belonging to the State, or to its citizens generally, must be construed strictly, and with reference to the intent and particular objects of the grant."

In the case of Barrett v. Stockton Railway Co. 40 Eng. Com. Law, 208, the court held that, "Where the language of an act of parliament, obtained by a company for imposing a rate of toll upon the public, is ambiguous, or will admit of different meanings, that construction is to be adopted which is most favorable to the public."    And the court refer to the general principle laid down by Lord Ellenborough, in his judgment in Gildart. v. Gladstone, 11 East, 675, (an action for Liverpool dock dues,) who there says, — " If the words would fairly admit of different meanings, it would be right to adopt that which is more favorable to the interest of the public and against that of the company ; because the company, in bargaining with the public, ought to take care to express distinctly what payments they are to receive, and because the public ought not to be charged unless it be clear that it was so intended."    In the case of the Leeds and Liverpool Canal v. Hustler, 1 B. & C. 424, (8 Eng. Com. Law, 118,) the court say, " Those who seek to impose a burden upon the public should take care that their claim rests upon plain and unambiguous language."    All these cases are decided on the principle that government grants are construed strictly against the grantee, and in favor of the grantor.

In the case of Dyer v. Tuscaloosa Bridge Co. 2 Alab. R. 305, the court hold, that a grant of a ferry over a public watercourse, and for the convenience of the community, is not such an exclusive grant as necessarily implies that the government will not directly or indirectly interfere with it by the creation of a rival franchise or otherwise.

See also the case of the Cayuga Bridge Co. v. Magee, 2 Paige's Ch. R. 119, where it is laid down, "that acts in derogation of common right, must be construed strictly against the grantee, according to the principles of the common law."

But there is another ground on which this case might be rested with safety.  It is a well-settled principle of law that statutes *in pari materia* are to be construed together; that the different statutes are to be construed as one; that they must be viewed together in all their parts ; and if, by any fair construction, the whole can stand together, it is the duty of the court to put that

construction upon them. United States v. Freeman, 3 Howard, 564. In which case the court say, " The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law. Doug. 30; 2 Term Rep. 387, 586; Maule & Selw. 210. If a thing contained in a subsequent statute, be within the reason of a former statute, it shall be taken to be within the meaning of that statute; Lord Raym. 1028; and if it can be gathered from a subsequent statute *in pari materia*, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute. Morris v. Mellin, 6 Barn. & Cress. 454 ; 7 Barn. & Cress. 99."

This mode of construing statutes is so old and well settled as to make the citation of further authorities unnecessary. It is very obvious, by applying these principles to the present case, that courts and boards of county commissioners were enumerated as the tribunals prohibited from granting ferry rights. The legislature reserved the right of granting the like franchise to any other person whenever the public good required it. In pursuance of this reserved right the legislature delegated the power of licensing ferries to the city council. The council, by this act, were made the proper judges of the necessity of other ferries, and in fact were constituted the guardians of the public interest in this respect, and when the city council have exercised this power and granted a license, no tribunal is authorized to revise or annul their proceedings on the ground that no necessity existed for another ferry. This court has no more power to inquire into and revise the action of the city council, in this respect, than it has to declare war or issue a proclamation for the conquest of Cuba or Canada. The power of granting franchises is a political and police regulation, resting exclusively with the legislature. The legislature is the judge of the number of ferries required for public accommodation, and the city council, when acting under a delegated authority from the legislature, possess the same power, which is not examinable by any other department of the government except to ascertain whether the power has been properly delegated. See Salem & Hamburg Turnpike Co. v. Lyme, 18 Conn. R. 456.

The omission of the word *exclusive*, which word the legislature well understood and freely used in various other charters granted at the same term of the legislature, is a very significant circumstance in this case.

In the case of Harrison v. The State, 9 Missouri, 526, where

in the repeal of one city charter and the adoption of another, in a provision with regard to ferry charters the word "exclusive," which was employed in the first one, was dropped in the second. The court say that "according to the charter of 1839 the city authorities were invested with exclusive power within the city to license and regulate the keeping of ferries; but in the charter of 1843, which was in force when this indictment was found, the word "exclusive" is omitted, with the design, as we must presume, of leaving this subject upon the same basis with the other subjects of city taxation.

"The question whether a law be void for its repugnancy to the constitution is a question which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." Fletcher v. Peck, 6 Cranch, 87, 131; 2 Cond. Rep. 317.

"If any act of Congress or of the legislature of a State violates the constitutional provisions, it is unquestionably void; if, on the other hand, the legislature of the Union or the legislature of any member of the Union, shall pass a law within the general scope of their constitutional power, the court cannot pronounce it to be void merely because it is in their judgment contrary to the principles of natural justice. If the legislature pursue the authority delegated to them, their acts are valid; if they transgress the boundaries of that authority, their acts are invalid." Iredell, J., in Calder v. Bull, 3 Dallas, 386; 1 Cond. Rep. U. S. 184 n.

But these different rules of construction all point one way. They all require the court to construe the charter favorably to the public and strictly against the grantee. Nothing can be taken by implication or construction.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the District Court of the United States for the District of Iowa.

The plaintiff filed his petition in the District Court of the county of Dubuque, stating that by an act of the legislative assembly of the Territory of Iowa, approved the 14th of December, 1838, he was authorized to establish and keep a ferry across the Mississippi, at the town of Dubuque, and depart from and land at any place on the public landing of said town for the term of twenty years from the passage of said act; and that the act provided that no court or board of county commissioners should authorize any other person to keep a ferry within the limits of the town; that the petitioner was required, within

two years from the passage of the act, to use for said ferry a good and sufficient steam ferry-boat; that a sufficient number of flat-boats were also required to be kept, with a competent number of hands to work them, so as to convey across the river Mississippi persons and property as might be required; that a horse ferry-boat, by an amendatory act, was substituted for a steam ferry-boat.

And the plaintiff avers, that the above acts of the legislature conferred on him the exclusive privilege of ferrying across the river at the above place during the twenty years named in the act. And he avers that in all things he has complied with the requirements of the above acts, and that in doing so, he has incurred great expense; that at the commencement his ferry yielded little or no profit; but he persevered in keeping it up, hoping to be remunerated for his expense in its future profits.

He represents that the defendants, confederating with others to defraud him of his ferry right, have placed upon the ferry at the town of Dubuque a steam ferry-boat for the transportation of passengers, &c., and charges them for such transportation, &c., and claim that they have a right to do so, although the twenty years of the plaintiff's grant have not yet expired. He therefore prays for an injunction, &c.

At the appearance term of said court the defendants represented that one of them was a citizen of the State of Missouri, and the other a citizen of the State of Illinois; that the matter in controversy exceeds five hundred dollars, and they pray that the said action may be removed to the next District Court of the United States, to be held in the northern division of the district of the State of Iowa, and gave the security required by law; and the cause was removed to the District Court.

The defendants, in their answer, admit that the plaintiff has a charter to ferry across the river Mississippi at Dubuque, but they deny that it secures to him an exclusive right. And they say that their steam ferry-boat was put on and is run by them in accordance with a contract made with the city of Dubuque, authorizing the running of said boat for six years, from the first day of April, 1852; and they say that in running said boat they do not interfere with the right of the plaintiff other than such interference as is necessarily the result of a fair competition.

And the defendants say that the city of Dubuque entered into said contract with the said Gregoire by virtue of the power vested in the council by the fifteenth section of an act to incorporate and establish the city of Dubuque, of the 24th of February, 1847.

The act granting the ferry right to the plaintiff bears date the 14th of December, 1838. The first section provides, " that

Timothy Fanning, his heirs and assigns, be and they are hereby authorized, to establish and keep a ferry across the Mississippi river, at the town of Dubuque, in the county of Dubuque, and to depart from, and land at any place on the public landing of said town, which was set apart for public purposes by act of Congress approved the 3d of July, 1836, for the term of twenty years from the passage of the act.

The second section declared, " that no court or board of county commissioners shall authorize any person (unless as herein provided for by this act) to keep a ferry within the limits of the town of Dubuque. The conditions annexed were, that Fanning, his heirs and assigns, should, within two years from the passage of the act, procure a sufficient steam ferry-boat, and shall keep flat-boats and a sufficient number of hands for the accommodation of the public. On failure to do so, proof being made to the satisfaction of the county commissioner or the county court, the charter should be declared to be void.

By the act of July 24th, 1840, a horse-boat was substituted for the steam ferry-boat.

The right of the defendants arises under a contract made between the city of Dubuque and Charles Gregoire, the 11th of November, 1851; in which it was agreed by the corporation of the city, " in consideration of the covenants and stipulations hereinafter enumerated, have granted a license to Gregoire to keep a ferry across the Mississippi river, opposite the city of Dubuque, for six years from the first day of April next; it being understood that the city grant all the right it has and no more; with the privilege to land at any point opposite the city that he may choose.

Gregoire agreed to pay the city the sum of one hundred dollars annually, and to provide for said ferry a good and substantial steam ferry-boat, of sufficient capacity and dimensions to accommodate the travelling community, and to keep the same in good repair. And if the city should wish to grant the said franchise to any railroad before the expiration of the lease, they reserved the power to do so.

By the fifteenth section of the act incorporating the city, power is given to the city council to license and establish ferries across the Mississippi river, from the city of Dubuque to the opposite shore, to fix the rates of the same, and to impose reasonable fines and penalties for the violation of such laws and ordinances. This act was approved the 24th of February, 1847.

It is objected by the plaintiff's counsel, that the license set up by the defendants cannot avail them, as there is no ordinance of the council granting a ferry license to them, and that the

council can only act under their corporate powers in that way.

That the council have legislative powers in regard to the police of the city is admitted, but it does not follow that a contract may not be made under their sanction by the mayor, as was done in this case. The contract was in writing, and contained stipulations in regard to the public accommodation, which were important. The old rule was, that a corporation can make no contract which shall bind it except under its seal. That doctrine has long since been overruled, and it is now fully established, that the agents of a corporation may bind it by parol.

A license having been given, which, according to its terms must be considered binding on the corporation, it is unnecessary to look into the acts of the council regulating ferries, as they are not important, as regards the question of power. If the form of the license had been laid down in the city charter, or the mode of granting it, a conformity to such a regulation would be required, but no such provision is found in the charter. Regulations are made by ordinances, but as to them, beyond the granting of a license in this case, we need not inquire.

The principal question in the case is, whether the right granted to Fanning is exclusive.

The language used in the territorial act, it is argued, would seem to authorize an inference, that the right was intended to be exclusive. The right was given for twenty years to Fanning and his heirs, subject to the conditions expressed. An ordinary license is not granted to a man and his heirs. But it is said the beginning of the second section is somewhat explicit on this point. It provides, " that no court or board of county commissioners, shall authorize any other person (unless as hereinafter provided for by this act) to keep a ferry within the limits of the town of Dubuque."

The condition provided for, in the act above referred to, is any neglect on the part of Fanning or his heirs, which shall incur a forfeiture of his right. The prohibition on the court and the board of county commissioners to grant a license for another ferry, it is urged, would seem to show an intent to make the grant exclusive. And that the reason for this might be found in the alleged fact, that when the ferry was first established, a considerable expenditure was required, and little or no profit was realized for some years. But all the judges present except one held that the grant was not intended to be exclusive. In their opinion this view is sustained by the consideration that although the county court and county commissioners were prohibited from granting another license at Dubuque, yet this

45 *

prohibition did not apply to the legislature; and as it had the power to authorize another ferry, the general authority to the council to "license and establish ferries across the Mississippi river at the city," enabled the corporation, in the exercise of its discretion, to grant a license, as the legislature might have done.

This power was clearly given to the city, and it may be exercised, unless the grant of Fanning be exclusive.

The board of commissioners has been established, and the legislature has substituted in its place, for the purpose of licensing ferries at Dubuque, the city council, and it is contended that this change of the power ought not to affect the rights of the plaintiff. The restriction on the commissioners of the county does not apply, in terms, to the city council; and the court think it cannot be made to apply by implication. The license to Gregoire was granted thirteen years after the grant to the plaintiff. And it may well be presumed, from the increase of the city at Dubuque, and the great increase of the line of trade through it, that additional ferry privileges were wanted. Of this the granting power was the proper judge.

The exclusive right set up must be clearly expressed or necessarily inferred, and the court think, that neither the one nor the other is found in the grant of the plaintiff, nor in the circumstances connected with it.

The argument that the free navigation of the Mississippi river, guaranteed by the ordinance of 1787, or any right which may be supposed to arise from the exercise of the commercial power of Congress, does not apply in this case. Neither of these interfere with the police power of the States, in granting ferry licenses. When navigable rivers, within the commercial power of the Union, may be obstructed, one or both of these powers may be invoked.

The decree of the District Court is affirmed with costs.

## *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Iowa, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby affirmed, with costs.