Carroll v. Campbell.

CARROLL, *Appellant,* v. CAMPBELL *et al.*

IN BANC.

1. **Ferry:** INJUNCTION. A ferry franchise is a property right, and for its interruption injunction will lie, especially where the interference is of a continuous character.

Carroll v. Campbell.

2. ———— : ————. To entitle a person to have an unlicensed ferry restrained, it is sufficient that he show that he has paid the license tax required, and is the only person entitled to take tolls for ferriage.

3. ———— : CITY : EXCLUSIVE FRANCHISE. The grant to a city by the legislature of the right to license ferries does not authorize the city to grant exclusive ferry privileges.

4. ———— : ———— : ————. The grant, however, by such city of the exclusive privilege is void only as to the unauthorized part.

5. ———— : ———— : ————. It is within the power of the city council to grant another franchise when it deems the public need so requires.

6. ———— : INTER-STATE COMMERCE. The grant of a ferry privilege by a city council, within the limits of the city is not an interference with inter-state commerce, though the business of the ferry is across a navigable river into another state.

*Appeal from Madison Circuit Court.*—HON. J. D. Fox, Judge.

REVERSED AND REMANDED.

*J. B. Dennis* for appellant.

(1) The state of Missouri by an act, approved March 29, 1872, article 3, sections 39 and 45, delegated to the city of Cape Girardeau, Missouri, "the exclusive power and right to regulate, tax and license all ferries within the limits of the city," and to "exercise complete and perfect control over * * * the trade, commerce, etc., as the city may deem expedient." Acts, 1872, p. 328. This suit is bottomed upon the decision of this court in *Challis v. Davis*, 56 Mo. 25. And the granting of exclusive ferry franchises has long been the settled policy of this state. *Harrison v. State*, 9 Mo. 526; *Ferry Co. v. Wisch*, 73 Mo. 655; R. S. 1855, sec. 21, p. 784; R. S. 1865, sec. 21, p. 302; R. S. 1879, sec. 5692; *City v. Ferry Co.*, 14 Mo. App. 216. When the crown or legislature aliens to a municipal corporation its whole power to establish and regulate ferries within its limits,

the municipal body in respect to this legislation or public trust represents the sovereign power, and may make grants of ferry rights in as ample a manner as the sovereign. In *Challis v. Davis*, it is said, the legislature may grant an exclusive ferry franchise. *Minturn v. Larue*, 23 How. ( U. S.) 335. In *Conway v. Taylor's Ex'rs*, 1 Black. ( 66 U. S.) 603, it was declared that the value of a ferry franchise is its exclusiveness. 6 American Jurist, p. 87 ; Gould on Waters, sec. 146 ; Tiedeman's Limitation of Police Power, p. 316, *et seq.* ( 2 ) It is not pretended that appellant is claiming any right by, through or under any act of the legislature which was passed subsequent to the adoption of the present constitution of Missouri. It appears from the record, and is conceded, that the charter of the city of Cape Girardeau was granted to it March 29, A. D. 1872, and whatever rights were conferred by that charter have not been repealed in express terms by the constitution of 1875, and are still in force. *Van Brown v. Sheppard*, 74 Mo. 310 ; *City of Kansas v. Payne*, 71 Mo. 159 ; *State ex rel. v. Van Every*, 75 Mo. 530 ; *City v. Ferry Co.*, 14 Mo. App. 216. ( 3 ) But, whether appellant has an exclusive ferry franchise, by reason of the words of exclusion used in his license, or not, it is exclusive as long as the city refuses to grant a ferry franchise to defendants or other persons. And the city may and has lawfully refused to grant a ferry franchise to defendants. *Campbell v. Cramer*, 96 Mo. 75, which is the suit commenced by these defendants to compel the city to grant them a ferry franchise. Defendants would be liable, notwithstanding they may have applied for a ferry franchise. *State v. Meyers*, 63 Mo. 324. ( 4 ) "Interruptions in the enjoyment of a ferry franchise are a nuisance which may be abated by injunction by one having the legal franchise." *Newport v. Taylor*, 16 B. Mon. ( Ky.) 779 ; *Collins v. Ewing*, 51 Ala. 101 ; *Turnpike Co. v. Miller*, 7 Johns. Ch. 107 ; *Midland*

*etc., v. Wilson*, 28 N. J. Eq. 537 ; *McRoberts v. Wash-burn*, 10 Minn. 23 ; *East Hartford v. Hartford, etc.*, 16 Conn. 171 ; *Long v. Beard*, 3 Murph. (N. C.) 57 ; *Walker v. Armstrong*, 2 Kan. 198.

*Frank E. Burroughs* and *G. D. Reynolds* for respondents.

(1) The granting, refusing or dissolving a temporary injunction lies in the discretion of the court, and cannot be reviewed on appeal. *Tanner v. Irwin*, 1 Mo. 65 ; *Johnson v. Board*, 65 Mo. 47 ; *Verden v. Coleman*, 18 Howard, 86 ; *Witthaus v. Bank*, 18 Mo. App. 181 ; *Buffington v. Harvey*, 95 U. S. 99 ; *Stores v. Franklin*, 14 Wall. 15 ; High on Injunctions, sec. 891, ch. 20, p. 533 ; High on Injunctions [2 Ed.] ch. 33 ; *Hoyt v. Gelston*, 13 Johns. (N. Y.) 139. The only subject of review is the decree dismissing the bill. (2) The grant of an exclusive power to license does not confer the power to grant an exclusive license. *Fanning v. Gregoire*, 16 How. 524 ; *Chicago v. Rumpff*, 45 Ill. 99 ; *Logan & Son v. Pyne*, 43 Iowa, 524. (3) The word "exclusive" operates to exclude or shut out the power of the state and county over the same subject. That is its only force. *State v. Harper*, 58 Mo. 530 ; *State v. Sherman*, 50 Mo. 265 ; *Harrison v. State*, 9 Mo. 526. (4) The power cannot be derived from the words, "regulate and tax." Those words cannot be construed to mean suppression or prohibition. They imply necessarily the continued existence of the thing regulated and taxed. *State v. Clark*, 54 Mo. 17, 33, 34. (5) In all cases where the legislature gave the city power to prohibit, suppress or restrain, that power is given in *his verbis*. Charter, art. 3, secs. 7, 8, 9, 10, 17, 19, 20, 22, 23 ; Acts, 1872, pp. 332–3. (6) The power to license, regulate and tax a vehicle, conveying goods and passengers into, and out of, a city cannot be given by the legislature. *St. Charles v. Nolle*, 51 Mo. 122. (7) The power

claimed by the city is *ultra vires*, is a monopoly, is against the constitution of Missouri and public policy; and is, therefore, null and void. Const. of Mo., art. 6, sec. 35. That constitution is retroactive, as the city can have no vested right in a mere power, uncoupled with an interest; and plaintiff's right if any never attached until after the adoption of that constitution. *Waller v. Everett*, 52 Mo. 57; *State ex rel. v. Straat*, 41 Mo. 58. (8) The Mississippi river is a national, navigable stream, in which every American citizen has a right of way, and is under control of congress. U. S. Const., art. 1, sec. 8, clause 3; U. S. Const., art. 1, sec. 9, clause 6. (9) The power claimed by the city is against the letter and spirit of the federal constitution in that it attempts to regulate inter-state commerce. *Gloucester Ferry Case*, construing that constitution, is decisive of this cause. U. S. Const., art. 1, sec. 8, clause 3; *Ferry Co. v. Pennsylvania*, 114 U. S. 196. See, also, the opinion of the supreme court of the United States in case of *Sabine Robins. v. Taxing District*, 120 U. S. 489. (10) An exclusive ferry franchise is an incorporeal hereditament and, hence, property. Where did the city get the power to create property? The words, "tax, regulate and license," cannot be distorted to mean create.

GANTT, P. J.—Richard Carroll, in May, 1886, presented to the judge of the circuit court of Cape Girardeau county, at chambers and in vacation, a petition in which he alleged that he had been granted, by ordinance of the city council of Cape Girardeau, Missouri, an exclusive right to run and operate ferry boats over and across the Mississippi river within the jurisdictional limits of the city of Cape Girardeau, Missouri, and a strip of land on the Illinois shore opposite said city, for a term of ten years from September 14, 1885, for the purpose of transporting persons and property across the Mississippi river, upon condition that he pay

the city a semi-annual tax of $50 from said date; that
the ordinance required him to furnish a specified kind
of boat; to put on other boats if business required it;
to give bond for faithful performance of the duties of a
ferryman, etc.; that he also holds a ferry license from
the county board of Alexander county, Illinois, to use
and operate a ferry boat from and within certain limits.
in east Cape Girardeau, in said county in Illinois, across
the Mississippi river to the city of Cape Girardeau,
Missouri, for a like term of ten years; that he had
provided the boat, and was engaged in the business of
ferrying persons and property across the river at and
between the points designated; that he now has, and
will continue to have for ten years from the date afore-
said, the sole and exclusive right to all tolls, etc., to be
derived from doing a ferrying business within and for
the jurisdictional limits of the city of Cape Girardeau,
Missouri; that Campbell & Houck are partners in a
kind of ferrying business, to be hereafter designated.

That, after license had been granted to Carroll,
Campbell & Houck had applied to the mayor and coun-
cil of Cape Girardeau for a ferrying license, and had
been refused; that, after being refused a license,
Campbell & Houck "had placed a little ten-horse-power
steam ferry boat, of the capacity of three or four
wagons, within the jurisdictional limits of said city,
and within the space to which Carroll has the sole and
exclusive right as ferryman," and have continued and
are doing and threaten to continue to do ferrying busi-
ness, crossing and ferrying a great many passengers and
much freight from the jurisdictional limits of the city
of Cape Girardeau, Missouri, across the Mississippi
river to the state of Illinois; that the tolls, receipts,
etc., at ordinary rates, amount to nearly or quite $1,000
per annum; that said acts of Campbell & Houck are
unlawful, and are done without any sanction of Carroll;
that they have by competition reduced tolls so much
that Carroll for two months has been running at a daily

loss of from $5 to $7; that damages to him are irreparable, unless Campbell & Houck are restrained, etc. Wherefore he prays an injunction restraining Campbell & Houck from doing a ferrying business, or transporting persons or freight, either or both, from the jurisdictional limits of the city of Cape Girardeau, Missouri, across the Mississippi river to Illinois.

The petition was heard *ex parte* at chambers, and a temporary injunction issued as prayed, plaintiff giving bond. At the return term, on motion and petition of defendants Campbell & Houck, the venue of the case was changed to Madison county, in the adjoining circuit. At the September term of the Madison circuit court the defendants answered. The answer, denying the claim of Carroll to an exclusive right, avers that Campbell & Houck are operating a ferry for conveying freight and passengers, and avers that they had a right so to do, according to the constitution and laws of the United States and of the state of Missouri; denies that the city council had power to grant an exclusive license to anyone; and avers that they run their boat, the Rosalie Smoot, between the states of Illinois and Missouri, across the Mississippi river, and that they, as owners of said vessel, are and were engaged in the carrying trade between the states, and in the conveyance thereof; that their vessel was duly incorporated and officered as provided by the laws of the United States; and that the said attempt of said city of Cape Girardeau, by ordinance, to create an exclusive right in said Carroll to do the ferrying business across the Mississippi at a point to and within the jurisdictional limits of the said city of Cape Girardeau, was and is an attempt to regulate commerce between the states, and violates the constitution of the United States, and is null and void. They also aver that the ordinance set out in the petition is null and void, because an attempt to create a monopoly, and that it violates the provision

of the constitution of the state of Missouri, in that it creates an exclusive franchise.

Having filed their answer, Campbell & Houck then filed a motion to dissolve the injunction, which motion set out the following grounds: *First.* Because the judge improperly granted the injunction. *Second.* Because the bill of the plaintiff presents no grounds for equitable relief. *Third.* Because the matters and things in the petition set out show that the attempt of the city of Cape Girardeau is an attempt to regulate commerce between the states. *Fourth.* Because said petition shows that the city of Cape Girardeau has no power to create an exclusive franchise in the plaintiff, nor in anyone else. *Fifth.* Because the matters in said bill show no ground for injunctive relief, or that the plaintiff is entitled to any relief. The cause was heard on the motion, Carroll introducing the ordinances of Cape Girardeau as to ferries and granting exclusive right to Carroll, the charter of said city ( Sess. Acts, Mo. 1872, p. 328), and also oral testimony as to character of boat, etc., the ruinous effect of competition, etc. Defendants introduced no evidence. The court dissolved the temporary injunction, and dismissed the bill. Carroll filed motions for new trial, and in arrest of judgment, which were overruled; and he then prayed an appeal to the St. Louis court of appeals, which, on giving bond, was granted. Subsequently, in consequence of proceedings had in this court, reported as *State ex rel. Campbell v. Court of Appeals,* 97 Mo. 276, the appeal was transferred to this court.

These questions arise on the facts appearing in this record: Is the owner of a ferry franchise entitled to an injunction to restrain as a nuisance the interruption of his franchise by an unlicensed rival? Had the city of Cape Girardeau the power to grant the plaintiff this exclusive ferry privilege? And is the exercise of this power an attempt to regulate commerce between the states of Missouri and Illinois, and prohibited by

the constitution of the United States? "A ferry franchise is as much property as a rent or any other incorporeal hereditament, or chattels or realty. It is clothed with the same sanctity and entitled to the same protection as other property." *Conway v. Taylor's Ex'rs*, 1 Black. (U. S.) 603. It is well settled that for an interruption of this right an injunction will lie, particularly when, as in this case, the injury is of a continuous nature, and committed under a claim which indicates a continuance or frequent and constant repetition of it. Courts of equity take cognizance of these cases to prevent the vexation and harassment of continued disturbances, prevent a multiplicity of suits, and to preserve the right by restraining the commission and repetition of threatened injury. *Challis v. Davis*, 56 Mo. 25; *Newport v. Taylor's Ex'rs*, 16 B. Mon. 699; *East Hartford v. Bridge Co.*, 16 Conn. 171; *Ferry Co. v. Wilson*, 28 N. J. Eq. 537; *McRoberts v. Washburn*, 10 Minn. 23; *Long v. Beard*, 3 Murph. L. & Eq. (N. C.) 57; *Collins v. Ewing*, 51 Ala. 101.

Hence, if it shall appear that plaintiff has been granted a lawful franchise, and his evidence shows he was in good faith complying with the ordinance, and that defendants had no license, and were asserting the right to maintain a ferry without license from the city, then the plaintiff is entitled to his writ of injunction. Counsel for defendants urge that plaintiff must show an exclusive franchise before the court will enjoin them. Courts have used this expression in some instances, but not in cases like this. We think it is clear that, if the law and the evidence in this case will sustain plaintiff's claim to a licensed ferry, that he has paid the license fee or tax required by the city, and is the *only person entitled to take tolls for ferriage in said city*, that equity will restrain an unlicensed ferry from interrupting his franchise, although it may be that the city had not the power to grant an exclusive ferry right. The attempt of defendants to maintain an unlicensed ferry

on the same line of transit, and to demand and receive tolls therefor, would necessarily infringe plaintiff's right, and entitle him to the aid of a court of equity to prevent this threatened continuous interference.

II.  This brings us to the contention that the ordinance granting plaintiff this license was unconstitutional and void, because exclusive.  The right to keep a ferry was a franchise granted by the crown in England, and the statutes and decisions in the various states and the federal courts have been largely founded upon the common-law view of this right.  The right to keep a public ferry has generally, in this country, been conceded to rest upon legislative authority.  This view has been adhered to in this state since the decision of this court, in 1834, in *Stark v. Miller*, 3 Mo. 470; R. S. 1889, ch. 66.  At common law the essential element involved in a ferry franchise was the exclusive right to transport persons and property from one shore to another, over the intervening water, for toll, and its exclusiveness was its chief value.  *Conway v. Taylor's Ex'r, supra; Pipkin v. Wynns*, 2 Dev. L. (N. C.) 402.  That it was within the power of the legislature to grant an exclusive ferry franchise, prior to the adoption of the constitution of 1875, we have no doubt. *Challis v. Davis, supra; Wiggins Ferry Co. v. Railroad*, 73 Mo. 389.  It was so held in many of the states under the earlier constitutions.  *Pipkin v. Wynns, supra.*

But, while it was competent for the legislature to grant an exclusive privilege of this kind, it was a canon of construction that a grant of such a nature was construed most strongly against the grantee and in favor of the public, and, unless the legislature made the grant exclusive in the charter itself, it would never be held to be so  "It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended

within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public." *Fanning v. Gregoire*, 16 How. 534; *Minturn v. Larue*, 23 How. (U. S) 435. It was, accordingly, ruled in the last-cited case that under the charter of the city of Oakland—almost identical in terms with the charter of Cape Girardeau—that the legislature did not intend to grant the power to the city to grant an exclusive charter. So in this case, while the state has conferred upon the city alone the prerogative of licensing ferries, it did not grant it the right to grant exclusive ferry privileges to any person or incorporation. In these public grants nothing passes by implication. *United States v. Arredondo*, 6 Pet. 736, and cases there cited, It follows, then, that plaintiff cannot support his claim to an *exclusive* ferry *for ten years* under the city charter.

What then is his condition? The city unquestionably had the right, and the sole right within its jurisdiction, to regulate and license ferries. It granted the plaintiff a ferry franchise, for which he was to pay a tax of $50 every six months. From the records it appears he has complied with the ordinance in every respect. Does the use of the word "exclusive" in his grant render his franchise absolutely void? We think not. It is a familiar rule that grants, and even laws, may be valid in part, and void in part, and that which is lawful will be upheld. It was ruled by Chief Justice SHAW in *Fisher v. McGirr*, 1 Gray, 1, "that where a statute has been passed by the legislature under all the forms and sanctions requisite to the making of laws, some part of which is not within the competency of legislative power, or is repugnant to any provision of the constitution, such part thereof will be adjudged void and of no avail, whilst all other parts of the act, not obnoxious to the same objection, will be held valid,

and have the force of law.   There is nothing inconsistent, therefore, in declaring one part of the same statute valid and another part void."    This was most clearly the view of this court in another branch of this litigation in the case of *State ex rel v. Cramer*, 96 Mo. 75.   In that case Chief Justice NORTON remarked :   "If the ordinance, in so far as it grants an exclusive franchise for ten years is invalid, this would not necessarily make it invalid as to that portion of it which authorizes a license to be issued every six months to Carroll upon his paying the license tax as provided therein." See, also, *County Court v. Griswold*, 58 Mo. 175.   It follows that the plaintiff had a valid ferry franchise from the city, notwithstanding the ordinance exceeded the grant in the charter by attempting to make the privilege *exclusive* for ten years.

We have not overlooked the claim of the plaintiff that, as the city charter was granted prior to the constitution of 1875, it would not be affected by the prohibition in the constitution.   Inasmuch as we hold that the legislature had never conferred the power to grant the plaintiff an exclusive right of ferriage, it becomes unnecessary to examine how far charter enactments of this character existing at the time of the adoption of the constitution were affected by it.   It is clear the question does not arise in this case.

But the defendants do not rest their defense alone upon the absence of equity in the plaintiff's bill.   They go further, and assert a right in themselves to operate a ferry over the same line of transit, without any license from the state, and aver that they are operating a ferry for conveying passengers and freight, and have a right to do so under the constitution and laws of the United States and Missouri ; aver that they run their boat, the Rosalie Smoot, between the states of Illinois and Missouri, across the Mississippi river ; that they, as owners of said boat, are engaged in the carrying trade

between said states ; that their vessel was duly incorporated and officered as provided by the laws of the United States ; and that the attempt of the city to give Carroll the exclusive right to ferry in said city was an attempt to regulate commerce, and violates the constitution of the United States.  No evidence was offered by the defendants to show a compliance with the United States navigation laws, but we will consider these facts proven for the purposes of this decision.  Let it be admitted, then, that the defendants are engaged in the carrying trade on the Mississippi river, and their vessel duly officered and licensed ; does this give them the right of ferry which they claim, and which they admit they exercised ?  We think not.  The question mooted in the case is not new.  It has been met and decided by the supreme court of the United States time and again ; and it is with great satisfaction that one reads the opinions of that court, and observes with what clearness the jurisdiction of the states and the federal government are defined.  No fear seemed to have prevailed *at that time that* the states which had created the federal government would deny it any of its legitimate functions ; and, on the other hand, no disposition was evinced to grasp for the general government any power not specially delegated to it by the states.

In the case of *Conway v. Taylor's Ex'rs, supra,* the question raised by respondents was examined by Mr. Justice SWAYNE.  In that case it appears that on the twenty-ninth of January, 1794, a ferry was granted to James Taylor, of Virginia, by the Mason county court, from the landing in front of Newport across the Ohio river.  In 1853 the appellants "built the steamer Commodore, and constituted themselves 'the Cincinnati and Newport Packing Company,' for the purpose of running that steamer as a ferry boat from Cincinnati to Newport and from Newport to Cincinnati.  They rented for five years a portion of the esplanade in front of Monmouth street in the city of Newport from the

common council of that city, They caused this vessel to be enrolled on the fourth of January, 1854, at the custom house at Cincinnati under the act of congress for enrolling and licensing vessels in the coasting trade. They then commenced running her as a ferry boat. The landings were at the wharves on each side of the river. The right of the Commodore to land there for all *lawful* purposes was not challenged. Under these circumstances, Taylor's executors exhibited their bill in equity for an injunction. In that case the right of the state to grant the ferry franchise on the navigable river was denied, on the ground that she could not exercise any jurisdiction beyond her own borders. The court held 'that a ferry is in respect of the landing place, and not of the water. The water may be to one and the ferry to another.' 'The privilege of the license may not be as valuable to the grantee by not extending across the river, but, as far as it does extend, he is entitled to all the provisions of the law, the object of which is to secure the exclusive privilege of maintaining a ferry at a designated place.' The franchise is confined to the transit from the shore of the *state*. The same rights which she ( the state ) claims for herself she concedes to others. She has thrown no obstacle in the way of the transit from the states lying upon the other side of Ohio and Mississippi. She has left that to be wholly regulated by their ferry laws."

It was urged in that case, just as in this that, the *Commodore* having been enrolled under the laws of the United States, the injunction violated the rights which the enrollment and license gave her in respect to the trade by obstructing the free navigation of the Ohio. The court held that the decree only enjoined the Commodore from interfering with *the ferry privileges;* that it was not *intended to exclude or restrain defendants from prosecuting* the ordinary business of commerce. The court then proceeds to discuss the question raised by defendants in this case, that the granting of this

exclusive ferry privilege by the state of Kentucky was repugnant to the constitutional provision that "the congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." Article 1, sec. 8, cl. 4. "The character and extent of the power thus conferred, and the boundaries which separate that power from the powers of the states touching the same subject, came under discussion in this court for the first time in *Gibbons v. Ogden*, 9 Wheat. 1. It was argued on both sides with exhaustive learning and ability." The judgment of the court was delivered by Chief Justice MARSHALL. The court said : "They [ state inspection laws ] form a portion of the immense mass of legislation which embraces everything within the territory of a state *not surrendered to the general government ;* all which can be most advantageously exercised by the states themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a state, and those which respect turnpike roads, *ferries*, etc., are parts of this *mass.*" The proposition thus laid down has not since been questioned in any adjudicated case. The same principle has been repeatedly affirmed in other cases, both in this and the state courts.

In *Fanning v. Gregoire*, 16 How. 534, before referred to, this court held : "The argument that the free navigation of the Mississippi, guaranteed by the ordinance of 1787, or any right which may be supposed to arise from the exercise of the commercial power of congress, *does not apply in this case.* Neither of these interfere with the *police powers of a state in granting ferry* licenses. When navigable rivers within the commercial powers of the Union may be obstructed, one or both of these powers may be invoked. Rights of commerce give no authority to their possessor to *invade* the rights of property. He cannot use a bridge, a canal or a railroad without paying the fixed rate of compensation.

He cannot use a warehouse or vehicle of transportation belonging to another without the owner's consent. No more can he invade the *ferry franchise* of another without authority from the holder. The vitality of such a franchise lies in its exclusiveness." He concludes: "There.has been now nearly three quarters of a century of practical interpretation of the constitution. During all that time, *as before the constitution had its birth,* the states have exercised the power to *establish and regulate ferries; congress never.* We have sought in vain for any act of congress which involves the exercise of this power."

We are referred by the learned counsel to the case of *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196, as overruling *Conway v. Taylor's Ex'rs* and *Fanning v. Gregoire, supra.* We do not so understand that case. The question directly involved in that case was wholly unlike the one at bar, and in *Conway v. Taylor's Ex'rs.* In *Case of the Gloucester Ferry Co.* it had been chartered by the state of New Jersey, and was engaged in the transportation of freight and passengers for hire by a steam ferry across the Delaware river from New Jersey to Philadelphia. The state of Pennsylvania attempted to tax the capital stock of this ferry company. It appeared that the company was chartered in New Jersey. It owned its dock in New Jersey, and leased one in Philadelphia. It never owned any property in Philadelphia or Pennsylvania, except its lease on the dock. Its whole business consisted in transporting passengers and freight to and from Gloucester to Philadelphia. Its boats were registered at Camden, New Jersey. It never owned any boats in Pennsylvania, and its boats were never allowed to remain in that state, except so far as was necessary to discharge and receive passengers. The supreme court of the United States decided that the commerce between the states which consisted in the transportation of

persons and property between them is a subject of national character, and that the state of Pennsylvania could not levy a tax upon the business of this ferry company. The case was one wholly distinct from the power of the state of New Jersey to license that ferry, and the supreme court reaffirmed the jurisdiction of the states, and distinguished the right to exact reasonable tolls from the tax proposed to be imposed. It says: "It is true that from the earliest period in the history of the government the states have authorized and regulated ferries, not only over waters entirely within their limits, but over waters separating them; and it may be conceded that in many respects the states can more advantageously manage such inter-state ferries than the general government; and *that the privilege of keeping a ferry with a right* to take toll for passengers and freight *is a franchise grantable by the state*, to be exercised within such limits and under such regulations as may be required for the safety, comfort and convenience of the *public*. Still the fact remains that such a ferry is a means, and a necessary means, of commercial intercourse between the states bordering on their dividing waters, and it must, therefore, be conducted without the imposition by the states of taxes or other burdens upon the commerce between them. Freedom from such imposition (by the states) does not, of course, imply exemptions from reasonable charges as compensation for the carriage of persons in the way of tolls or fares, or from the ordinary taxation to which other property is subjected, any more than like freedom of transportation on land implies such exemption. Reasonable charges for the use of property, either on water or land, are not an interference with the freedom of transportation between the states, secured under the commercial power of congress." *Packet Co. v. Keokuk,* 95 U. S. 80; *Packet Co. v. St. Louis,* 100 U. S. 423; *Vicksburg v. Tobin,* 100 U. S. 430; *Trans. Co. v. Parkersburg,* 107 U. S. 691; *Ferry Co. v. East St. Louis,* 107 U. S. 365

As before said in the case at bar no,such question of taxation is involved. The state of Missouri has exercised only such a right in this case as is expressly conceded in the *Gloucester Ferry Co. case* she might, without placing herself in repugnance to the constitution of the United States. If the state of Missouri were asserting a right here to tax the capital stock of a ferry company chartered in Illinois, and retaining all its property in that state, and only touching shores in delivering inter-state commerce, .then the *Gloucester Ferry Co. case*, would be a controlling authority; but when, as is conceded by Judge FIELD, she has simply granted a franchise of keeping a ferry within her own borders, with the privilege of taking reasonable tolls, we hold she is simply exercising a part of her unquestioned sovereignty. If the power to grant exclusive ferry privileges, such as Kentucky granted in the *Conway v. Taylor's Ex'rs case*, is sustained by the supreme court of the United States, we have no fears that that court will find any attempt on the part of this state to interfere with commerce between the states by simply sustaining plaintiff's right in this case to maintain a ferry at Cape Girardeau, within the limits prescribed by the present constitution of this state. That this grant may be in one sense exclusive, growing out of the unquestioned right of the city council to determine how many ferries are required at said city, does not render his grant unconstitutional. We simply hold that the grant to him, in so far as it would prevent the present or any future city council from granting another franchise when the public need requires it, is unconstitutional, and unwarranted by the city charter; otherwise, it is valid. It follows that the judgment of the circuit court must be reversed, with direction to the said court to make a decree restraining defendants from interfering with plaintiff's franchise by keeping a ferry within the jurisdictional limits of the city of Cape Girardeau until such time as the city council may see fit to grant them

a license to keep a ferry in said city; and it is further ordered that an account be taken as to the tolls unlawfully taken by defendants, and granting an injunction in accordance with the views herein expressed. All concur.

The foregoing opinion, heretofore delivered by GANTT, P. J., in division number 2, is hereby adopted as the opinion of the whole court.