## NEW YORK CENTRAL & HUDSON RIVER RAIL-ROAD COMPANY *v.* BOARD OF CHOSEN FREE-HOLDERS OF THE COUNTY OF HUDSON.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW JERSEY.

No. 50. Argued November 13, 1912.—Decided February 24, 1913.

Congress, by passing the Act to Regulate Commerce, has taken control of interstate railroads, and having expressly included ferries used in connection therewith, has destroyed the power of the States to regulate such ferries. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, distinguished.

*Quære:* Whether *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, overruled *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196.

An assertion of power by Congress over a subject within its domain must be treated as coterminous with its authority over the subject, and leaves no element of the subject to control of the State.

The operation at one time of both the power of Congress and that of the State over a matter of interstate commerce is inconceivable; the execution of the greater power takes possession of the field and leaves nothing upon which the lesser power can operate.

No portion of the business of a ferry which is part of an interstate railway is under the control of the State; and so *held* that the state authorities have no power to regulate the fare of passengers, whether railroad passengers or not, on the ferry between Weehawken, New Jersey, and New York City, known as the West Shore Ferry and operated by the New York Central & Hudson River Railroad.

76 N. J. L. 664, reversed.

THE facts, which involve the constitutionality under the commerce clause of an ordinance of Hudson County, New Jersey, fixing rates of ferriage across the Hudson river to New York City on the ferry operated by the New York Central & Hudson River Railroad as lessee of the West Shore Railroad Company, are stated in the opinion.

*Mr. Albert C. Wall* and *Mr. Frank Bergen*, with whom *Mr. James B. Vredenburgh* and *Mr. Thomas Emery* were on the brief, for plaintiff in error:

The regulation of the rates and fares for transportation via these ferries is inoperative because it conflicts with the commerce clause of the Constitution of the United States. *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204.

Commerce national in character is for Congress to regulate. Non-action implies it shall be unregulated. *Wabash Railway* v. *Illinois,* 118 U. S. 557.

The *Covington Bridge Case* has been cited many times by the court. See *The Lottery Case,* 188 U. S. 352; *The Gloucester Ferry Case,* 114 U. S. 196; *Hanley* v. *Kansas City Ry. Co.,* 187 U. S. 617; *St. Clair County* v. *Interstate Transfer Co.,* 192 U. S. 454.

While *Chosen Freeholders* v. *State,* 3 Zab. 206, affirmed, 4 Zab. 718, purports to sustain the right and power of the state authorities to regulate the rates and fares chargeable for interstate ferry transportation, the cases cited as authority for the conclusion there announced did not involve and were not authoritative upon the point decided, and the absence of Federal legislation upon the

subject was superseded by the act of Congress of 1866, ch. 124, and of 1887, ch. 104, regulating interstate transportation. *People* v. *Babcock*, 11 Wend. 586; *Gibbons* v. *Ogden*, 9 Wheat. 203; *Smith* v. *Turner*, 7 How. 393; *Cooley* v. *Board of Wardens*, 12 How. 319, do not support the conclusion of that case.

Congress has legislated concerning ferries operated in connection with railroads. See § 1, Int. Comm. Act of February 4, 1887.

The Hepburn Amendment of 1906 leaves this language unchanged.

The railroad company has filed a copy of its tariff with the Commission.

By the requirement of the act of Congress of the filing of this tariff, and the filing of the tariff in obedience thereto, the tariff became a law governing the transportation precisely as if the tariff itself had been enacted by Congress in the same words and figures. *Gulf, Colorado & Santa Fe R. Co.* v. *Hefley & Lewis*, 158 U. S. 98; *Texas & Pacific R. Co.* v. *Dryden*, 202 U. S. 242; *Missouri Pacific R. Co.* v. *Larabee Mills Co.*, 211 U. S. 612, 623; *Poor* v. *C., B. & Q. R. Co.*, 12 I. C. C. Rep. 418, 422; *Armour Packing Co.* v. *United States*, 209 U. S. 56, 80.

The exercise of the power which the Board of Freeholders here asserts is in conflict with the exclusive power of regulation of the same subject-matter by Federal authority. *Sinnott* v. *Davenport*, 22 How. 227.

The ferryboats are subjects of admiralty jurisdiction. *The St. Louis*, 48 Fed. Rep. 312; *Railroad Co.* v. *Richmond*, 19 Wall. 584; *Bowman* v. *Chi. & N. W. Ry. Co.*, 125 U. S. 465, 484; *Illinois Cent. R. R. Co.* v. *Illinois*, 163 U. S. 142.

The resolutions contain no provision in respect of the time at which they are to go into effect.

Obedience thereto would have been violative of the express inhibitions of the interstate commerce acts and

subjected the railroad company to the penalties therein prescribed in respect of such violation.

Exercise by the State of its power to create corporations and confer upon them charter powers to maintain and operate instrumentalities of interstate transportation does not draw to the State the power of regulation of the rates of fares or tolls for such transportation.

Considering the ferry as the landing, the license and regulation of its maintenance and operation may be of state cognizance, and nevertheless, if the ferry be interstate the ferriage fare is the subject of United States governance.

The Board of Freeholders of the County of Hudson has not the power to fix the rates of ferriage of foot-passengers on these ferries over the Hudson river, from New York to New Jersey.

*Mr. E. Parmalee Prentice,* with whom *Mr. John Griffin* and *Mr. George Welwood Murray* were on the brief, for defendant in error:

The resolutions of the Board of Freeholders are not invalid as a regulation of commerce among the States.

Federal power over commerce among the States is exclusive only in matters of general concern.

In all local matters state statutes are valid until superseded by Congress. *Cooley* v. *Port Wardens,* 12 How. 310; *Mobile* v. *Kimball,* 102 U. S. 691, 702; *Atlantic &c. Company* v. *Philadelphia,* 190 U. S. 160; *Bowman* v. *Railroad Co.,* 125 U. S. 465, 507; *Leisy* v. *Hardin,* 135 U. S. 100; *Stoughtenburgh* v. *Hennick,* 129 U. S. 141; *Telegraph Co.* v. *Pendleton,* 122 U. S. 347; *Ouachita Packet Co.* v. *Aiken,* 121 U. S. 444; *Robbins* v. *Taxing District,* 120 U. S. 489; *Wabash Railway* v. *Illinois,* 118 U. S. 557; *Morgan* v. *Louisiana,* 118 U. S. 455; *Cardwell* v. *Bridge Co.,* 113 U. S. 205, 210; Willoughby on the Fed. Const., § 309.

The power to regulate commerce is given to Congress,

not to the courts. The question whether a particular statute of a State is prohibited by congressional silence, is a question for Congress. State laws should not be held void except in cases so clear that Congress could not overrule the judicial decision. Thayer, Cases on Const. Law, 2190–2191.

Regulation of ferry rates is a matter of local concern within state jurisdiction.

The States always have regulated ferriage alike over intrastate and boundary streams.

The existing statutes under which the States now regulate ferriage over intrastate and boundary streams support this proposition.

The subject is one which demands intimate knowledge of local conditions. State legislatures have never been able to deal with ferriage by general law, and have turned the subject over to local town and county authorities. It would be impossible for Congress to perform the work now done by supervisors, county commissioners, boards of freeholders, etc. Vermont Act of Feb. 27, 1787; Session Laws, p. 70.

The decisions of this court and of the state courts support the existing practice which recognizes state jurisdiction.

A practical and long-continued construction of the Constitution by the States and by Congress is conclusive in this court. *Stuart* v. *Laird,* 1 Cranch, 299; *License Cases,* 5 How. 507, 607; *Conway* v. *Taylor,* 1 Black, 603; *Carroll* v. *Campbell,* 108 Missouri, 550, 564–565.

This practice, continued now for an additional half-century, is no less conclusive in the case at bar. Unless this rule be followed and the course of governmental administration by other branches of government and by the States be recognized, the separation of powers, and government by three coördinate departments would be impossible.

Regulation of ferries on intrastate and boundary streams was, until 1885, considered a matter of state police jurisdiction beyond Federal authority. *Gibbons* v. *Ogden*, 9 Wheat. 1. (See Mr. Webster's statement on pp. 18, 20); *Conway* v. *Taylor*, 1 Black, 603; *Fanning* v. *Gregoire*, 16 How. 524; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, aff'g 102 Illinois, 560; *Mills* v. *St Clair County*, 2 Gilm. (Ill.) 197; aff'd 8 How. (U. S.) 569; *People* v. *Babcock*, 11 Wend. 586; *Ferry Co.* v. *United States*, 5 Blatchf. 198; *Chilvers* v. *People*, 11 Michigan, 43; *Marshall* v. *Grimes*, 41 Mississippi, 27; *Mayor &c.* v. *Longstreet*, 64 How. Pr. 30; Gould on Waters, § 35.

The decision of the *Gloucester Ferry Case*, 114 U. S. 196, decided in 1885, established Federal jurisdiction to legislate concerning ferriage over boundary streams, but did not turn what had been an exclusive state jurisdiction into an exclusive Federal jurisdiction. State laws on this subject are still valid until superseded by a Federal statute.

The legal definition of a ferry refers to the point of departure as the situs of the ferry.' The ferry franchise consists in the right of transporting from that point. *Conway* v. *Taylor*, 1 Black, 603; *Memphis* v. *Overton*, 3 Yerg. (Tenn.) 387, 390; *State* v. *Faudre*, 54 W. Va. 122; *Power* v. *Village of Athens*, 99 N. Y. 592; Massachusetts, Act of 1641, Laws 1792–1800, p. 965; West Virginia Code, 1906, Chap. 44, § 15.

Under this definition no conflict of laws can arise upon boundary streams, for a municipality or State upon one side of the stream has complete control of ferriage from its own shore, and cannot interfere with ferriage from the opposite shore.

The franchise to leave a State comes from state law, which imposes also the duty of the carrier to receive, carry and deliver. *Louisville Ferry Co.* v. *Kentucky*, 188 U. S. 385, 394; *Bowman* v. *Chicago &c. Railway*, 115 U. S. 611, 615.

The Constitution does not confer the right of intercourse between State and State. *Gibbons* v. *Ogden*, 9 Wheat. 211; Federal Common Law and Interstate Carriers, 9 Columbia Law Rev. 375; Federal Power over Carriers and Corporations (Macmillan, 1907), pp. 23–37; 124–130; *Re Transportation of Fruit*, 10 I. C. C. Rep. 360.

Some recent cases suggest that there is also a Federal right to engage in interstate commerce, but this proposition has never been advanced without dissent, and in any event does not deny the right derived from state law. The state franchise is the historic right upon which the common law of carriers is built. *Crouch* v. *London & N. W. Ry.*, 14 C. B. 255.

The privilege of keeping a ferry over boundary streams, with the right to take toll for passengers and freight, is grantable by the State, to be exercised within such limits and under such regulations as may be required for the safety, comfort and convenience of the public. *Gloucester Ferry Case*, 114 U. S. 196, 217; *State* v. *Faudre*, 54 W. Va. 122; *Ferry Co.* v. *Russell*, 52 W. Va. 356; *Cross* v. *Hopkins*, 6 W. Va. 323; *Carroll* v. *Campbell*, 108 Missouri, 550; *State* v. *Sickmann*, 65 Mo. App. 499; *Tugwell* v. *Eagle Pass Ferry Co.*, 74 Texas, 480; *Parsons* v. *Hunt*, 98 Texas, 420; *Nixon* v. *Reid*, 8 So. Dak. 507; *Hatten* v. *Turman*, 123 Kentucky, 844.

The majority opinion in the *Covington Bridge Case*, 154 U. S. 204, considered in connection with the facts before the court, announced no new rule.

The cases which recognize state power to regulate ferries over boundary streams are still authoritative. *Williams* v. *Wing*, 177 U. S. 601.

*Louisville Ferry Case*, 188 U. S. 385, approves *Conway* v. *Taylor*, 1 Black, 603. See, also, *St. Clair County* v. *Transfer Co.*, 192 U. S. 454; *Burlington &c. Ferry Co.* v. *Davies*, 48 Iowa, 133; *Phillips* v. *Bloomington*, 1 Greene (Iowa), 498, 502; *Bowman* v. *Walthen*, 2 Mc-

Lean, 370; *Challiss* v. *Davis*, 56 Missouri, 25; *Columbia &c. Bridge Co.* v. *Geisse*, 38 N. J. L. 39; *Gear* v. *Bullerdike*, 34 Illinois, 74.

The second resolution, regulating rates for a round trip starting from the New Jersey side, is within the jurisdiction of New Jersey. *State* v. *Sickmann*, 65 Mo. App. 499.

There is no Federal statute which supersedes state jurisdiction to regulate ferries.

The New Jersey courts have construed the regulations involved in the case at bar as applying only to such ferry service as is disconnected from railroad transportation.

The distinction between ordinary ferriage and ferriage which is connected with railroad transportation is well recognized. Interstate Commerce Act, § 1; *St. Clair County* v. *Transfer Co.*, 192 U. S. 454.

The construction of a state law by the state courts is accepted in this court as final. *Collins* v. *Texas*, 223 U. S. 288; *Missouri Pacific Ry. Co.* v. *Larabee Mills*, 211 U. S. 612; *Louisville &c. R. Co.* v. *Mississippi*, 133 U. S. 587; *Provident Institution* v. *Massachusetts*, 6 Wall. 611; *Randall* v. *Brigham*, 7 Wall. 523; *Gut* v. *State*, 9 Wall. 35; *Richmond* v. *Smith*, 15 Wall. 429; *Leffingwell* v. *Warren*, 2 Black, 599.

The Interstate Commerce Act is not involved.

The statute applies only to transportation wholly by railroad, or partly by railroad and partly by water when both are used under a common control.

Ferriage disconnected from railroad transportation is not affected. *Goodrich Co.* v. *Int. Com. Comm.*, 190 Fed. Rep. 943; *Int. Com. Comm.* v. *Goodrich Co.*, 224 U. S. 194.

Federal statutes concerning enrollment and inspection of vessel, licensing officers, etc., are not involved. *Conway* v. *Taylor*, 1 Black, 603; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Mayor &c.* v. *Starin*, 106 N. Y. 1; *Mayor &c.* v. *Longstreet*, 64 How. Pr. 30; *Midland Ferry*

*Co.* v. *Wilson,* 28 N. J. Eq. 537; *Carroll* v. *Campbell,* 108 Missouri, 550, 562–563; *Marshall* v. *Grimes,* 41 Mississippi, 27; *People* v. *Babcock,* 11 Wend. 586; *Chilvers* v. *People,* 11 Michigan, 43.

These statutes govern all boats navigating public waters of the United States, whether crossing state lines or not. To give them the effect for which counsel contend would deprive the States of all power over ferries—even across intrastate streams.

The Federal statute of 1866 is not involved.

The history of the statute as well as its express provisions show that, like the Interstate Commerce Act, this is a railroad statute. It has been in force forty-six years, and has never been applied to ferriage disconnected from railroad transportation. Federal Power over Carriers and Corporations (Macmillan, 1907), pp. 95, 209.

The rates established by the Board of Freeholders are not invalid as taking the property of plaintiff in error without compensation.

Argument supporting this proposition will be based upon the facts shown in the record.

The rates have been in existence for several years, and should not now be disturbed without considering the results of this practical test. *Willcox* v. *Gas Company,* 212 U. S. 19, 44.

*Mr. Henry E. Bodman,* by leave of the court, filed a brief as *amicus curiæ. Mr. Alexis C. Angell* and *Mr. Herbert E. Boynton* were on the brief.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The rails of the main line of the West Shore Railroad Company extend from Buffalo to Albany, New York, and beyond through the State of New York into New Jersey to the terminus of the road at Weehawken on the west

bank of the Hudson river.    From Weehawken steam
ferries known as the West Shore Railroad ferries are
operated over the river to several terminal points in New
York City for the purpose of carrying railroad passengers
and traffic from Weehawken to New York and from New
York to Weehawken.    Although these ferries are known
as West Shore Railroad ferries and are operated as railroad
ferries, their business is not limited to incoming persons
or traffic carried over the lines of the railroad or to persons
or traffic conveyed from New York to Weehawken to
be transported from there over the railroad.    Indeed,
from both directions a very large number of persons be-
sides considerable traffic "constantly move to and fro
between the two States, not having used or intending to
use the lines of the West Shore Railroad."

    In 1905 the Board of Chosen Freeholders of Hudson
County, New Jersey, adopted two ordinances, one fixing
the rate for foot passengers ferried from New Jersey to
New York and the other for a round trip commencing
on the New Jersey shore, which rates were applicable
to the ferries in question.    The New York Central &
Hudson River Railroad, engaged as a lessee in operating
the lines of the West Shore Railroad and its railroad
ferries, commenced this proceeding to prevent the enforce-
ment of the rates fixed by the ordinances.    The contention
was that the ordinances were an unwarranted inter-
ference with the interstate business of the company and
that the enforcement of the ordinances would constitute
a direct burden on interstate commerce, which could not
be done consistently with the Constitution.    The Supreme
Court of New Jersey maintained the contentions of the
railroad company.    The Court of Errors and Appeals
reversed the judgment of the Supreme Court.    76 N. J.
Law, 664.    The case is now here, the writ of error having
been directed to the Supreme Court, to which the record
was remitted from the Court of Errors and Appeals.

    VOL. CCXXVII—17

At the outset it is to be observed that the contentions pressed in argument by both parties take a wider range than the necessities of the case require. We make a very brief reference to certain decisions of this court referred to in argument by both parties in order that they may aid us to plainly mark the boundaries of the real issues required to be decided, thus enabling us to put out of view irrelevant considerations and confine our attention to things essential.

*Fanning* v. *Gregoire*, 16 How. 524, required a consideration of the right of the legislature of Iowa to authorize a ferry across the Mississippi river at Dubuque. Without going into details it suffices to say that the subject was elaborately considered and the power of the State to grant the ferry right was sustained. In *Conway* v. *Taylor's Executors*, 1 Black, 603, the right of the State of Kentucky to grant franchises for ferrying across the Ohio river, was considered and the power was upheld, the general reasoning stated in *Fanning* v. *Gregoire* being reiterated and approved. It is undoubtedly true that in the course of the reasoning of both the cases just referred to expressions were made use of which give some support to the view that the power to regulate ferriage, even as to a stream bounding two States, was purely local, not transferred by the States to Congress, and therefore not within the grant of power to Congress to regulate commerce.

*Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, concerned the validity of a tax imposed by the State of Pennsylvania on a ferry company operating between Gloucester, New Jersey, and the city of Philadelphia. The tax was resisted on the ground that it was a direct burden on interstate commerce and therefore void as an interference with the power of Congress to regulate commerce. The contention was sustained. The whole subject of ferriage was elaborately considered, and in the course of the opinion it was expressly declared, after

considering the decisions in *Fanning* v. *Gregoire* and *Conway* v. *Taylor's Executors,* that ferriage over a stream constituting a boundary between two States was within the grant to Congress to regulate commerce, and therefore not subject to be directly burdened by a State. It was also, however, held that in view of the character of such ferries and the diversity of regulation which might be required, the right to regulate them came within that class of subjects which although within the power of Congress the States had the right to deal with until Congress had manifested its paramount and exclusive authority.

In *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, the right of the State of Kentucky to impose tolls for use of a bridge across the Ohio river, was challenged on the ground that the State had no authority to fix the tolls, because to do so was the assertion of a power to regulate commerce and therefore was an interference with the exclusive power of Congress on that subject. The tolls were held to be invalid. The opinion beyond question reasserted the principle enforced in the *Gloucester Ferry Case* that the movement across a stream, the boundary between two States, was within the grant of power to Congress to regulate commerce and therefore, generically speaking, not subject to the exertion of state authority. Indeed, in view of the fact that there was no act of Congress dealing with the subject of the tolls which were under review in the *Covington Case,* it is true to say that there are expressions in the opinion in that case which have been considered, whether rightly or wrongly we do not feel called upon to say, as qualifying or overruling the conclusion expressed in the *Gloucester Case* as to the power of a State to regulate ferries upon a stream bordering two States until Congress had manifested its purpose to exert its authority over the subject.

In *St. Clair County* v. *Interstate Transfer Co.,* 192 U. S. 454, the question considered was the liability of the

Transfer Company to penalties imposed by the County of St. Clair, a municipal corporation of the State of Illinois, for having failed to obtain a license "for carrying on a ferry for transferring railroad cars, loaded or unloaded, over the county of St. Clair in Illinois to the Missouri shore and from the Missouri shore to the county of St. Clair." It was decided that there was no liability for the penalty (a) because the business of transferring freight cars in the sense disclosed was not ferriage in the proper meaning of that word, and was the transaction of interstate commerce not in any view subject to state control; and (b) because the particular ordinance relied upon as the basis for imposing the penalty was void because of provisions discriminating against interstate commerce which it contained. The cases of *Fanning* v. *Gregoire, Conway* v. *Taylor's Executors, Gloucester Ferry Co.* v. *Pennsylvania* and *Covington Bridge Co.* v. *Kentucky* were referred to. It was expressly declared in view of the special grounds upon which the case was decided that it was unnecessary to consider whether the decision in the *Covington Bridge Case* had established the doctrine that the interstate business of ferrying over navigable rivers bordering two States was exclusively within the authority of Congress to regulate, and therefore was not, as declared in the *Gloucester Ferry Case*, subject to state regulation until Congress had exerted its authority over the matter.

In the light of this statement we come to state the contentions of the parties. The plaintiff in error insists, not following the exact order of its argument, *a*, that the assailed ordinances are repugnant to the commerce clause because Congress has legislated concerning railroad ferries and thereby manifested its purpose that there should be no longer room for the exertion of state power on the subject; and, *b*, that if this is not so it is now necessary to pass on the question reserved in the *St. Clair Case*, and to decide that the ruling in the *Covington Bridge Case*

affirmatively established that interstate ferriage like that here in question is so absolutely within the power of Congress as to exclude even in case of the inaction of Congress the presumption of a license for the exercise of state power.   On the other hand, the argument for the defendant in error is this: That the carrying on of the business of ferriage on navigable rivers constituting a boundary between States is not interstate commerce, that the power to regulate it was not surrendered by the States and consequently no authority was given over the subject to Congress.   This is sought to be shown by a copious review of adjudged cases, and by an analysis of what it is urged was the clear intendment of the opinion in *Gibbons* v. *Ogden*, especially as elucidated by the opinions in *Fanning* v. *Gregoire* and *Conway* v. *Taylor's Executors*. It is not denied that these theories are directly contrary to the ruling in the *Gloucester Ferry Case*, but it is urged that that case for the first time announced the doctrine of a national power over interstate ferriage and therefore practically amounted to making a new constitutional provision on the subject.   Obviously, however, the views just stated are advanced in a mere academic sense, since the argument admits that the ruling in the *Gloucester Ferry Case* is now conclusive and has settled the significance of the Constitution contrary to the views mentioned. Thus, at the very outset of the argument, after stating and elaborating the theory of exclusive state power over interstate ferriage, it is said: "The decision of the *Gloucester Ferry Case*, 114 U. S. 196, decided in 1885, established Federal jurisdiction to legislate concerning ferriage over boundary streams, but did not turn what had been an exclusive state jurisdiction into an exclusive Federal jurisdiction.   State laws on this subject are still valid until superseded by a Federal statute."   Again, after copiously reiterating the conceptions as to the novelty of the ruling in the *Gloucester Ferry Case* and its assumed

conflict with what had gone before, it is said: "The result of the *Gloucester Ferry Case*, therefore, with the other cases which have followed, has probably been to so extend the Federal authority over interstate ferriage as to bring the subject within the concurrent jurisdiction of Congress and of the States. It is a concurrent jurisdiction only, however, which has been established. In the absence of Federal legislation the States have all the power that they have been accustomed to exercise." Thus conceding the controlling force of the *Gloucester Ferry Case* and therefore not questioning the power of Congress which that case upheld, it is urged that the *Covington Bridge Case* should not be now held to have overruled or qualified the *Gloucester Ferry Case* so as to exclude the States from any right to regulate interstate ferriage before and until Congress has manifested its intention to exert its authority by dealing with the subject. Upon the assumption thus stated it is insisted that the court below rightly upheld the assailed ordinances because there has been no action by Congress exerting its authority over the subject with which the ordinances deal and therefore no room for the contention that it was not within the power of the State to enact them.

It is therefore apparent that the contentions of the plaintiff in error primarily invoke only the controlling effect of the ruling in the *Gloucester Ferry Case*, and insist that there has been action by Congress which destroys the presumption of authority in the State to act. It follows that the proposition that the *Covington Bridge Case* overruled the *Gloucester Ferry Case* is merely subordinate, and need not be considered unless it becomes necessary in consequence of an adverse ruling on the primary contention concerning the application of the *Gloucester Ferry Case*.

It is equally clear that the contention of the defendant in error as to the absence of all power in Congress over

interstate ferries is merely academic. From this it necessarily arises that the only ground relied upon to sustain the judgment below is the ruling in the *Gloucester Ferry Case*, and the further proposition that there has been no action of Congress over the subject of the ferriage here involved which authorizes the holding that state power no longer obtains. As, therefore, the claim on the one side of an all-embracing and exclusive Federal power may be, temporarily at least, put out of view and the assertion on the other of an absolutely exclusive state power may also be eliminated from consideration because not relied upon or because it is both demonstrated and admitted to be without foundation, it follows that to dispose of the case we are called upon only, following the ruling in the *Gloucester Ferry Case*, to determine the single and simple question whether there has been such action by Congress as to destroy the presumption as to the existence in the State of vicarious and revocable authority over the subject. We say simple question because its decision is, we think, free from difficulty, in view of the express provision of the first section of the Act to Regulate Commerce (act of February 4, 1887, c. 104, 24 Stat. 379), subjecting railroads as therein defined to the authority of Congress, and expressly declaring that "the term railroad as used in this act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any corporation operating a railroad, whether owned or operated under a contract, agreement or lease. . . ." The inclusion of railroad ferries within the text is so certain and so direct as to require nothing but a consideration of the text itself. Indeed, this inevitable conclusion is not disputed in the argument for the defendant in error, but it is insisted that as the text only embraces railroad ferries and the ordinances were expressly decided by the court below only to apply to persons other than railroad passengers, therefore the action by Congress does not ex-

tend to the subject embraced by the ordinances. But as all the business of the ferries between the two States was interstate commerce within the power of Congress to control and subject in any event to regulation by the State as long only as no action was taken by Congress, the result of the action by Congress leaves the subject, that is, the interstate commerce carried on by means of the ferries, free from control by the State. We think the argument by which it is sought to limit the operation of the act of Congress to certain elements only of the interstate commerce embraced in the business of ferriage from State to State is wanting in merit. In the absence of an express exclusion of some of the elements of interstate commerce entering into the ferriage, the assertion of power on the part of Congress must be treated as being co-terminous with the authority over the subject as to which the purpose of Congress to take control was manifested. Indeed, this conclusion is inevitable since the assumption of a purpose on the part of Congress to divide its authority over the elements of interstate commerce intermingled in the movement of the regulated interstate ferriage would be to render the national authority inefficacious by the confusion and conflict which would result. The conception of the operation at one and the same time of both the power of Congress and the power of the States over a matter of interstate commerce is inconceivable, since the exertion of the greater power necessarily takes possession of the field, and leaves nothing upon which the lesser power may operate. To concede that the right of a State to regulate interstate ferriage exists "only in the absence of Federal legislation" and at the same time to assert that the state and Federal power over such subject is concurrent is a contradiction in terms. But this view has been so often applied as to cause the subject to be no longer open to controversy. *Chicago, Rock Island & Pacific Ry. Co.* v. *Hardwick Farmers' Elevator Company,* 226 U. S.

426. Because in the *St. Clair Case, supra*, it was decided that a particular character of transportation of interstate commerce was not ferriage and not within state power, even where there had been no action by Congress, affords no reason for in this case extending state authority to a subject to which, consistently with the action of Congress, it cannot be held to apply.

The judgment of the Supreme Court of the State of New Jersey will be reversed and the case remanded for further proceedings not inconsistent with this opinion.