---

(163 App. Div. 79)

PEOPLE v. NEW YORK CENT. & H. R. R. CO. (No. 210–130.)

(Supreme Court, Appellate Division, Third Department. July 1, 1914.)

COMMERCE (§ 8*)—STATUTORY REGULATIONS—HOURS OF LABOR.

Labor Law (Consol. Laws, c. 31), § 8, forbidding the employment of railway signalmen for more than 8 hours in every 24 hours, is superseded as to employés engaged in interstate commerce by the Federal Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), limiting the time of such employment to 9 hours in each 24, since, Congress having legislated upon the subject, its legislation is exclusive, and there is no room for state legislation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

Appeal from Albany County Court.

The New York Central & Hudson River Railroad Company was convicted in the Police Court of a misdemeanor, and it appeals from the judgment of conviction and from an order of the County Court (147 N. Y. Supp. 789) affirming the conviction. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Visscher, Whalen & Austin, of Albany (H. Leroy Austin, of Albany, of counsel), for appellant.

Harold D. Alexander, of Albany (Daniel H. Prior, of Albany, of counsel), for the People.

HOWARD, J. The defendant was convicted in the Police Court in the city of Albany of a violation of section 8 of the Labor Law. That section undertakes to limit the number of hours in each day during which signalmen may be lawfully employed and the number of days in each month during which they may be lawfully employed. It also requires that each person so employed must have at least two days' rest in each calendar month. By chapter 349 of the Laws of 1913, any violation of the Labor Law is made a misdemeanor. Congress in 1907 passed a statute which likewise undertook to limit the number of hours in each day during which persons engaged in interstate commerce, and required to perform the same duties as signalmen, might be employed. The Labor Law limits the number of hours to 8 in every 24; the federal statute, known as the "Hours of Service Law," limits the number to 9 in every 24. It is apparent that both of these statutes deal with the same subject and cover the same ground.

Among the various attacks upon this judgment of conviction is the contention that the Labor Law attempts to regulate interstate commerce in derogation to the power vested in Congress, and that Congress itself has assumed exclusive control of the subject by its passage of the "Hours of Service" act. The strong trend of the recent decisions in the United States Supreme Court on the subject of conflicting jurisdiction in the matter of interstate commerce is to the effect that where Congress has legislated upon the subject such legislation becomes exclusive, and there is no room for state legislation. The state laws, so far as they cover the same field or relate to the same subject, are superseded absolutely by the federal laws. Repeatedly, in different phraseology, this idea has been expressed by the Supreme Court of the United States. The language is so emphatic and unequivocal that it is impossible to misinterpret it. Among the recent cases which have dealt with this subject are the following: New York Central Railroad Co. v. Hudson County, 227 U. S. 248, 33 Sup. Ct. 269, 57 L. Ed. 499; Michigan Central Railroad Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417; St. Louis, Iron Mt. & T. Ry. Co. v. Hesterly, 228 U. S. 702, 33 Sup. Ct. 703, 57 L. Ed. 1031; Adams Express Co. v. Croninger, 226 U. S. 49, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Northern Pacific R. Co. v. State of Washington, 222 U. S. 379, 32 Sup. Ct. 160, 56 L. Ed. 237.

The latter case deals with the subject of the hours of service of railroad employés, and seems to touch exactly the point in controversy here. In that case the court said:

"It is elementary, and such is the doctrine announced by the cases to which the court below referred, that the right of a state to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of Congress on the subject, and ceases when Congress

acts on the subject or manifests its purpose to call into play its exclusive power. This being the conceded premise upon which alone the state law could have been made applicable, it results that, as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the state. To admit the fundamental principle and yet to reason that because Congress chose to make its prohibitions take effect only after a year, the matter with which Congress dealt remained subject to state power, is to cause the act of Congress to destroy itself; that is, to give effect to the will of Congress as embodied in the postponing provision for the purpose of overriding and rendering ineffective the expression of the will of Congress to bring the subject within its control—a manifestation arising from the mere fact of the enactment of the statute."

In disposing of this question on appeal from the Police Court the learned county judge relied entirely upon People v. Erie Railroad Co., 198 N. Y. 369, 91. N. E. 849, 29 L. R. A. (N. S.) 240, 139 Am. St. Rep. 828, 19 Ann. Cas. 811. He followed the doctrine of that case absolutely without comment. He very properly assumed that the determination was binding upon him; but since the argument of the appeal in the County Court and since the argument before us, the Erie Case, 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. ——, has been reversed (May 25, 1914), by the United States Supreme Court. In the opinion written by that learned court the doctrine is reiterated that, when Congress acts, relative to interstate commerce, its assumption of jurisdiction is absolute and exclusive. The opinion says:

"It [the act of Congress] admits of no supplement; it is the prescribed measure of what is necessary and sufficient for the public safety and of the cost and burden which the railroad must endure to secure it."

And the court also says:

"The relative supremacy of the state and national power over interstate commerce need not be commented upon. Where there is conflict the state legislation must give way. Indeed, when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority, the regulating power of the state ceases to exist."

In the case at bar Middleton was concededly employed in interstate commerce. His hours of labor were fixed by the federal statute; they were also fixed by section 8 of the Labor Law. That is, the federal and the state government has each legislated upon this subject. The United States Supreme Court has held that this cannot be; that there can be no valid state legislation covering the same field where the federal authority has asserted its right to act.

The decision of the United States Supreme Court in the Erie Case is absolutely determinative of the question before us, and if we are to follow it and follow the other recent expressions of that court, we must hold that the judgment of conviction herein is nugatory and ineffectual.

Several other interesting questions are presented by this appeal, but in view of our disposition of the question as to the conflict of jurisdiction, the other questions become academic, and it is not necessary to discuss or pass upon them.

The order of the County Court should be reversed, and the judgment of the Police Court reversed, and the proceeding dismissed. All concur.