# Freihofer Baking Company *v.* John Barton Payne, Federal Agent, Appellant.

*Railroads—Ferry companies operated by railroads—Act of February 4, 1887, c104, 24 Stat. 379 (Interstate Commerce Act)—Free transportation.*

The term railroad as used in the Interstate Commerce Act includes all bridges or ferries used or operated in connection with any railroad. It is therefore unlawful for any person other than those of the excepted classes to use in interstate commerce any free ticket, free pass, or free transportation for the purpose of riding on a ferry boat operated by a railroad company.

*Common carriers—Negligence—Injury to property of persons unlawfully riding on a pass.*

Persons who are prohibited under the Interstate Commerce Act from receiving passes from a common carrier, do not occupy the position of passengers, while riding on a pass, which under the law, they were forbidden to use.

Where the property of such persons riding on unlawful passes is damaged, while in the course of transportation on the ferry boat of a common carrier, there can be no recovery.

*Common carriers—Ferry boats—Automobile left on boat without attendant—Contributory negligence.*

Where a motor truck was left unguarded during the passage of a ferry boat, and by reason of some jar to the boat was set in motion and injured, by going over the end of the boat, the chauffeur was guilty of contributory negligence in not properly caring for his machine, and there can be no recovery.

A passenger on a train or a ferry boat is obliged to exercise some reasonable care himself over his personal property which he brings upon the train or the boat. To hold otherwise would be at once to shift to the carrier all the responsibilities of the ownership of personal property, of which the owner still retained to a large extent, the possession and control.

Argued October 12, 1921. Appeal, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1919, No. 3053, on verdict for plaintiff in the case of Freihofer Baking Company v. John Barton Payne, Federal Agent. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Trespass to recover damages for injuries to auto-truck. Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,000 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*William Clarke Mason,* for appellant.—The court erred in its instructions to the jury as to the liability of

the defendant: Stevens v. Express Co., 55 Pa. Superior Ct. 366; Ritz v. Penna. R. R., 3 Phila. 82; Adams Express Co. v. Sharpless, 77 Pa. 516, 522.

As the defendants were riding on a pass which it was unlawful for them to receive, there could be no recovery even if there had been negligence on the part of the defendant: Illinois Central R. R. v. Messina, 240 U. S. 395; L. & N. R. R. Co. v. Motley, 219 U. S. 467.

*C. Brewster Rhoads,* and with him *George G. Chandler,* and *Roberts, Montgomery & McKeehan,* for appellee.—The case was for the jury as to the negligence of the defendant: Sturgis v. Kountz, 165 Pa. 358; Bauer v. Verona Ferry Co., 33 Pa. Superior Ct. 607; Wycoff v. Queen's River Ferry, 52 N. Y. 32; White v. Winnissimett, 7 Cush. 155 (Mass.).

OPINION BY HEAD, J., November 21, 1921:

The plaintiff, a baking company doing business in the City of Philadelphia, was the owner of a large autotruck used in the transportation and delivery of its product. Early in the morning of July 31, 1919, this truck in the charge of the plaintiff's chauffeur and an assistant had discharged the last of its load in the City of Camden, New Jersey, and started homeward. This journey of course involved the transportation of the truck and those in charge of it across the Delaware River by ferry. The truck was driven on the deck of the ferry boat and stopped at a point directed by some boat employee there in charge. The driver, as he and his assistant declared, shut down the engine, put on the emergency brake, left the car standing there and passed into the cabin where they were engaged in reading the morning paper. As the boat was entering the slip on the Philadelphia side there came the bump or jar, to use the language of the witnesses, against the piling that marks and protects the slip. The witness declared it was a heavy jar but it does not appear it caused them to give

any attention to their truck. That attention was first aroused by some person or persons outside the cabin shouting "whoa." Passing from the cabin to the deck they found their truck in motion towards the slight iron gate that guards the front of the boat as against the hurrying passengers. Before they could reach it the front of the truck had gone over the bow of the boat and was hanging there until the boat stopped. It was to recover damages for the injury thus done to the truck this action was brought.

The suit was brought against "Director General of Railroads Operating Philadelphia and Reading Railway." Manifestly, the reason why the action was thus brought is to be found in the following extract from the statement of claim. We deem it important to quote it. "Defendant is Director General of Railroads of the United States under the United States Railroad Administration controlling the operation of the Philadelphia and Reading Railway, a corporation created and existing under the laws of the State of Pennsylvania engaged in the business of the common carriage for hire operating a system of steam railroads and tracks in and about the State of Pennsylvania and elsewhere and controlling and operating a connecting line of ferry boats between the City of Philadelphia and Camden, New Jersey." This declaration of the plaintiff in the action makes it of vital importance to inquire in the outstart what relation existed between the employees of the baking company in charge of the truck and the operators of the railway system which included the ferry boat upon which they were riding. The evidence of the plaintiff's witnesses leaves no doubt on this subject. They were not employees of the railway company nor engaged in its service in the operation of the ferry boat. They were the employees of the plaintiff baking company, a private corporation engaged in the transaction of its own business. The testimony also shows without dispute that on the way over to Camden the plaintiff's employees had de-

livered a portion of their truckload at the office of the American Express Company, also a public common carrier, the operation of which was then under the control of the director of railroads. The statement of the chauffeur is that after delivering a portion of their load there "they give us this pass to take their freight over for them." Under what arrangement with the plaintiff baking company the American Express Company undertook to furnish a free pass to the employees of the plaintiff, to enable them to transact its business in Camden, we are not informed and with it we are probably not concerned. It is sufficient to say that the paper they received and the paper they used in obtaining access to the ferry boat and in paying their fares was both in form and substance a free ticket or a free pass.

This situation, developed by the pleadings and evidence, brings the present case directly within the sweep of the provisions of the Interstate Commerce Act of 1887 and its amendment by the later Act of 1906. At least since the decision of the Supreme Court of the United States in New York Central and Hudson River Railroad Co. v. Hudson Co., 227 U. S. 248, there can be no doubt of the correctness of the statement we have just made. The opinion of Chief Justice WHITE most elaborately and carefully reviews all of the earlier decisions on the subject and thus approaches the conclusion of the case. "We say simple question because its decision is we think free from difficulty in view of the express provision of the first section of the act to regulate commerce (Act of February 4, 1887, c. 104, 24 Stat. 379) subjecting railroads as therein defined to the authority of Congress and expressly declaring that 'the term railroad as used in this act shall include all bridges and ferries used or operated in connection with any railroad and also all the roads in use by any corporation operating a railroad, etc.' The inclusion of railroad ferries within the text is so certain and so direct as to require nothing but a consideration of the text itself." The

amending Act of June 29, 1906, provided (and we take this declaration from the opinion of Mr. Justice HARLAN in Louisville and Nashville Railroads v. Mottley, 219 United States 467, because the text of the act is not before the writer) "that a common carrier violating the clause forbidding it after January 1, 1907, directly or indirectly to issue or to give any interstate free ticket, free pass or free transportation for passengers should pay to the United States a penalty of not less than $100 nor more than $2,000. Any person (other than those of the excepted classes) who uses any such interstate free ticket, free pass or free transportation, becomes subject to a like penalty." It is without question in this case the plaintiff's employees were not within any excepted class permitted to ride upon the trains or boats of a transportation company engaged in interstate commerce, without payment of the usual fare. The American Express Company, a carrier, violated the paramount law of the land in issuing such a free ticket. The plaintiff's employees were guilty of a like violation in accepting the ticket and undertaking to pay the fare, which the law required them to pay in money, by the use of such ticket. It is a mistake, therefore, to suppose that the relation existing between these people and the carrier was that of passenger and carrier. They were not upon the ferry boat even as permissive licensees. They were there in manifest violation of the law of the land and the courts will not lend their aid to permit or to assist such persons in recovering for injury, to themselves or to their property, that was not wilfully or wantonly done to them. In Illinois Central Railroad Co. v. Messina, 240 U. S. 305, a man not an employee of the company was riding in the engine cab by the permission of the engineer operating the train. He had paid no fare. The train was derailed and this man was injured. He brought suit in a state court of the State of Mississippi and recovered a verdict and judgment in the sum of ten thousand dollars. That judgment was affirmed by the

Supreme Court of the State of Mississippi. Upon a writ of error to the Supreme Court of the United States the judgment was reversed without any remittitur, the opinion being delivered by Mr. Justice HOLMES. We are all of opinion, therefore, the plaintiff was without right of action against the defendant it sued and the learned court below should have affirmed the first point for charge presented by the defendant as follows: "The autotruck of the plaintiff was unlawfully upon the 'City of Reading' as it was traveling upon a pass of the American Railway Express Company." We must, therefore, sustain the tenth assignment of error.

We are also of opinion that the evidence clearly showed that plaintiff's employees were guilty of contributory negligence. Even had they been regular passengers the law did not justify them in abandoning their property or any care or oversight towards it the moment they deposited it upon the deck of the ferry boat. The evidence of any negligence on the part of the defendant was of a slight and precarious character. The mere fact there was some contact between the bow of the boat and the piling marking the way into the slip could scarcely be called a scintilla of evidence of negligence upon the part of those operating the boat. All the record discloses in addition to that is the statement of the chauffeur that what he had called "bump" was a "heavy jar." But passing that question and dealing only with the conduct of the plaintiff's agents in relation to their property we ought to say that even a passenger, on a train or a ferry boat, is obliged to exercise some reasonable care himself over his personal property which he brings upon the train or the boat. To hold otherwise would be to at once shift to the carrier all of the responsibilities of the ownership of personal property, of which the owner still retained, to a large extent, the possession and control. We are not prepared to accept such a doctrine as sound. Just exactly what caused the truck to move is not by any means clear nor does the testimony make plain whether

the wheels of the truck actually moved forward or whether the whole body of the truck simply slid forward on the rigid wheels. What is clear is that the truck moved but slowly towards the front of the boat. Did the bump against the piling loosen the grip of the emergency brake? It is not clear from the evidence although there is evidence that an hour later when the expert mechanic arrived he found the brake maintaining its hold. Had the chauffeur and his assistant remained upon the truck could they have checked that slight motion by the use of the ordinary foot brake? Indeed, it seemed to be almost apparent that had they been on the spot they could have checked the motion of the truck by their own physical strength, at least long enough that help might have arrived. A consideration of the whole of the evidence leads all of us to the conclusion that this plaintiff's employees plainly violated the obligation imposed upon them by the law, to exercise reasonable care over their own property. The plaintiff now seeks to saddle upon the defendant, the consequences plainly due, in part at least, to the negligence of his own employees. The learned trial judge, therefore should have affirmed the plaintiff's third point, namely, "the evidence shows that the employees of the plaintiff were guilty of contributory negligence." The twelfth assignment is sustained. For the reasons above given and for either or both of them the judgment must be reversed.

Judgment reversed.