## No. 27,973.

THE CITY OF LEAVENWORTH and THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiffs,* v. THE LEAVENWORTH TERMINAL RAILWAY AND BRIDGE COMPANY, *Defendant.*

(274 Pac. 207.)

Opinion filed February 9, 1929.

*William A. Smith,* attorney-general, *James B. Kelsey* and *Walter I. Biddle,* both of Leavenworth, for the plaintiffs.

*A. L. Berger,* of Kansas City, *Ralph M. Shaw, Walter H. Jacobs, Frank H. Towner* and *Richard H. Hollen,* all of Chicago, Ill., for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel defendant to maintain its bridge across the Missouri river at Leavenworth for pedestrian and vehicular traffic. All the facts have been agreed upon except on the issue of the income and expense of conducting such bridge, and on this issue depositions were taken. The record has been abstracted and the case has been briefed and argued.

The pertinent facts, as stipulated and established by the evidence, are as follows: The Missouri river at the point in question is a navigable stream and forms the boundary between the states of Kansas and Missouri. Congress, by the act of February 25, 1889

(25 U. S. Stat., 691), authorized the Leavenworth and Platte County Bridge Company, a Kansas corporation, to construct and maintain a bridge across the Missouri river at the point in question for the passage of railway trains, wagons and vehicles of all kinds, steam and street cars, animals, foot passengers, and for all road travel, for such reasonable rates of toll and "under such reasonable rules and regulations as may be prescribed by said corporation, its successors and assigns, and be approved from time to time by the secretary of war." The bridge so built was to be a lawful structure, recognized as a post route, upon which no higher charges should be made for the transmission of the mails, the troops and munitions of war of the United States, than the rate per mile paid for the transportation over the railroad or public highways leading thereto; the bridge to enjoy the rights and privileges of other post roads, and equal privileges in the use thereof to be granted to all telegraph companies, and the United States to have the right of way across the same for postal telegraph purposes. The design of the bridge was outlined in the statute, the plans were to be approved by the secretary of war, and it was provided that the railroad companies desiring to use the bridge should have equal rights to the passage of trains over the same upon the payment of reasonable compensation for such use, and in case the owner of the bridge and the several railroad companies failed to agree upon such payment and upon rules and conditions to which each should conform in using the bridge, all matters at issue between them should be decided by the secretary of war upon a hearing and proof. The right to alter, amend or repeal the act was expressly reserved. By the act of July 25, 1890 (26 U. S. Stat., 291), congress authorized a change in the design and structure of the bridge, the plans to be submitted to and approved by the secretary of war.

The defendant, The Leavenworth Terminal Railway and Bridge Company, is a Kansas corporation and is the successor in interest of the Leavenworth and Platte County Bridge Company mentioned in the acts of congress above referred to. The purpose for which the company was organized, as shown by its original charter filed in January, 1892, is the construction and maintenance of a railroad and of bridges in connection therewith, the railroad to be for the transportation of passengers and merchandise and to furnish terminal

facilities for other railroads in the city of Leavenworth, and to run from some point in the city of Leavenworth to some point in the state of Missouri, an estimated length of fifteen miles, and the Missouri river was to be bridged and crossed. By its amended charter filed March 2, 1892, the declared purpose of the corporation was to construct, maintain and operate a railroad, as stated in its original charter, and to exact and collect for itself toll and charges for the use of the bridge, railroad tracks and terminal facilities; to acquire any such bridge, tracks, or terminal facilities by purchase; to acquire franchises, and to hold, purchase, sell or mortgage such real and personal property.

On July 18, 1922, the city of Leavenworth, by ordinance granted to defendant a franchise (being a renewal or an extension of a previous franchise) of the right of way, to construct, maintain and operate its railroad and terminal facilities in the city of Leavenworth, on the conditions and provisions, among others, that the railway and wagon bridge across the Missouri river and approaches shall always be kept open, maintained and operated in such a way as to afford speedy and safe facilities for the use of the bridge for highway purposes, and to accommodate both wagon and railroad travel over the same.

The bridge, as constructed and used for some time, was a steel bridge consisting of two 330-foot pin-connected truss spans and one 400-foot pin-connected swing span located on piers. The bridge was 16 feet wide, with a single track of railroad through the center. Planks were laid on top of the ties to the height of the rail, forming the floor for vehicular and pedestrian traffic. In 1916 a walk-way four and one-half feet wide was built on the south side of the bridge, with a wooden railing on the outside of it. Three railroads use this bridge for their trains, and together operate from 55 to 60 trains across the bridge each 24 hours. Vehicles and trains could not use the bridge at the same time. Prior to June, 1926, there was no other bridge across the Missouri river at Leavenworth, but in that month there was completed by the federal government a bridge across the river at Leavenworth, and within two miles of this bridge, for the use of vehicular and pedestrian traffic, free of toll charges. This connected with the main streets of Leavenworth and improved roads in Kansas and with improved roads on the Missouri side. This resulted in a

substantial decline of the use of defendant's bridge for such purposes. Few persons would pay toll to cross defendant's bridge when, just as conveniently, or with but little further travel, on paved or otherwise well-improved roads, they could cross a better bridge free of toll.

The use of the bridge for railroad purposes is necessary, and for many years it formed a part of the interstate lines of railroads engaged in interstate commerce, and the transportation of the United States mail, and for these purposes must be maintained.

Generally speaking, the bridge was used for two classes of traffic —for the use of railroads, all of which was interstate commerce, and for vehicular and pedestrian traffic, which may or may not have been classified as interstate commerce. After the opening of the free bridge by the government the revenues from the vehicular and pedestrian traffic on defendant's bridge were insufficient to pay the operating cost and other proper expenses of defendant incident to such traffic.

About February or March, 1927, defendant ceased to maintain or operate its bridge for pedestrian and vehicular traffic.

The city of Leavenworth has never at any time, by ordinance or otherwise, attempted to forfeit the franchise rights of the defendant granted to it by ordinance previously mentioned; neither has the state attempted to forfeit the corporate franchise of defendant.

Turning now to the legal questions presented, it will be noted that this is not an action on behalf of the city of Leavenworth to forfeit defendant's franchise on the ground that defendant is not complying with its provisions, nor to seek any damages for breach thereof. Neither is it an action in which the state seeks a dissolution of the corporation because of its failure to continue to perform all of the classes of business proposed by its charter. The action is to compel defendant to carry on a branch of its business which, through no fault of its own, has become unremunerative. Plaintiffs assert their right to the relief sought on the grounds that the provisions of the acts of congress above referred to, the purposes for which defendant was incorporated, as shown by its amended charter and the provisions of the franchise ordinance of the city of Leavenworth, are mandatory in their nature and require defendant to continue to maintain and operate its bridge for vehicular and pedestrian traffic even though defendant does so at a financial loss.

Defendant argues that the provisions of the acts of congress and of its charter are but grants of authority which it may exercise or not at its option. But we need not discuss these arguments further, for the action must be dismissed for a reason suggested by defendant.

Defendant argues that since the Missouri river is a navigable stream, forming the boundary between the two states, that congress, in the exercise of its power to regulate interstate commerce and of its authority over navigable streams, was authorized to enact the statutes above referred to, and that in doing so it reserved to itself and to the federal government all questions relating to the structure of the bridge or nature of the traffic over it, even to the extent of determining the tolls or charges which might be made, and rules or regulations concerning its use; hence, that this court is without authority to compel defendant to construct its bridge in any specific way, or so as to accommodate any specific travel, or compel defendant to permit any specific traffic on the bridge, especially one which would cause it a financial loss, or to provide the tolls, charges, or rules or regulations for such traffic.

This argument is sound and must be sustained. That congress has power to regulate commerce among the states, and authority to supervise structures over navigable streams, is well settled; indeed, it is not here controverted. Congress may, directly or through a corporation created for that purpose, construct bridges over navigable streams between states for the accommodation of interstate commerce by land, and has frequently done so. (*Luxton v. North River Bridge Co.*, 153 U. S. 525, 38 L. Ed. 808, 14 Sup. Ct. Rep. 891.) Here, by the act authorizing its construction, the federal government has assumed complete control over the structure and use of the bridge. (*N. Y. Central R. R. v. Hudson County*, 227 U. S. 248, 57 L. Ed. 499, 33 Sup. Ct. Rep. 269; *St. Louis, Iron Mt. & S. Ry. v. Edwards*, 227 U. S. 265, 57 L. Ed. 506, 33 Sup. Ct. Rep. 262; *Erie R. R. Co. v. New York*, 233 U. S. 671, 58 L. Ed. 1149, 34 Sup. Ct. Rep. 756.) This court can exercise no authority over this bridge indirectly that it could not do directly. (*Kansas Southern Ry. v. Kaw Valley Dist.*, 233 U. S. 75, 58 L. E. 857, 34 Sup. Ct. Rep. 564.)

Since this court has no jurisdiction of questions involving the structure of the bridge, or the character of the interstate traffic over it, this proceeding should be dismissed.

It is so ordered.